**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**RACHEL WALL,**

***Plaintiff,***

**v.** **Case No. 5:26-CV-02119-JKP**

**COMPONE ADMINISTRATORS INC. D/B/A ABSENCEPLUS AND FDI GROUP,**

***Defendants.***

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants CompOne Administrators Inc. d/b/a AbsencePlus ("CompOne") and Financial Designs Inc.'s ("FDI") (together, "Defendants") Motion to Dismiss, filed pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3). *ECF No. 4*. Plaintiff Rachel Wall ("Wall") filed a Response, to which Defendants filed a Reply. *ECF Nos. 6*, *8*. Thereafter, Wall filed a Surreply that Defendants filed a Response to. *ECF Nos. 12*, *19*. Upon consideration, the Court will grant Defendants' Motion to Dismiss, (*ECF No. 4*).

**BACKGROUND**

This case arises out of Defendants CompOne Administrators Inc. d/b/a AbsencePlus ("CompOne") and Financial Designs Inc.'s ("FDI") (together, "Defendants") past remote-work employment[1] of Plaintiff Rachel Wall ("Wall"). *See ECF No. 1-3*. Because the instant Motion pending before the Court concerns only personal jurisdiction and improper venue, it is a sufficient summary of the allegations at this stage to note that Wall generally alleges Defendants

[1] Defendant Financial Designs Inc. claims it never employed Plaintiff. *ECF No. 4* at 1 n.1.

wrongfully terminated her employment after raising concerns and refusing to perform certain acts. *Id*.

Relevant to personal jurisdiction and improper venue, Wall's Complaint includes claims that Defendants hired her on June 23, 2025, and that:

> 5. This Court has personal jurisdiction over Defendants CompOne Administrators, Inc. d/b/a AbsencePlus and FDI Group because each Defendant is a Michigan corporation that purposefully directed its activities toward the State of Texas by hiring Plaintiff, a Texas resident, to perform work in Texas. Each Defendant entered into an employment relationship with Plaintiff that was to be performed in Bexar County, Texas, and each Defendant made employment decisions affecting Plaintiff in Texas, including the decision to terminate her employment. Defendants are further alleged to have committed tortious acts in Texas, including wrongful termination in violation of Texas public policy, by directing Plaintiff to perform an illegal act and then terminating her employment when she refused to do so. Each Defendant is subject to service of process in Texas pursuant to Texas Business Organizations Code § 5.251 and Texas Rule of Civil Procedure 106 by service on the Texas Secretary of State as agent for service of process.
>
> 6. Venue is proper in Bexar County, Texas, under Texas Rules of Civil Procedure 86 and 87 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Bexar County, Texas, where Plaintiff was employed and performed her work as a Senior ADA Specialist. Plaintiff was hired by and worked for Defendants in Bexar County, and her refusal to perform the illegal act—using unapproved artificial intelligence systems involving protected health information and personally identifiable information—and her subsequent termination are inextricably tied to work performed in Bexar County. Defendants further purposefully availed themselves of the privilege of conducting business in Texas by employing Plaintiff in Texas and directing her to perform work in Texas.

*Id*. at 6–7. Responding to the Complaint, Defendants filed the instant Motion arguing the Court "lacks personal jurisdiction over Defendants because they do not conduct any business in Texas, nor do they provide any support or services for any clients of customers located in Texas." *ECF No. 4* at 2. "For similar reasons," Defendants argue, "this Court is also an improper venue for the case." *Id*.

## LEGAL STANDARDS

### I. *Prima Facie* Case Supporting Jurisdiction

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court must dismiss a claim if the court does not have jurisdiction over the defendant. Following the filing of a motion to dismiss due to lack of personal jurisdiction, the burden is on the plaintiff to establish that the court has jurisdiction over the defendant. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989)). If an evidentiary hearing is not held by the court, in order for a plaintiff to satisfy this burden, it "must present sufficient facts as to make out only a *prima facie* case supporting jurisdiction." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). However, if an evidentiary hearing is held by the court, the plaintiff is held to a higher standard in that it must demonstrate jurisdiction by a preponderance of the admissible evidence. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008).

"The allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiff[ ] for purposes of determining whether a *prima facie* case for personal jurisdiction has been established." *Jester v. RS Diving Contractor GmbH*, No. 4:21-CV-00476, 2021 WL 3832811, at *4 (S.D. Tex. Apr. 29, 2021) (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). However, the Court is not required "to credit conclusory allegations, even if uncontroverted." *Hil-Tech, LLC v. Shree Mahalaxmi Indus.*, No. 4:22-CV-02310, 2023 WL 4602738, at *3 (S.D. Tex. July 3, 2023), *adopted*, No. 4:22-CV-02310, 2023 WL 4602691 (S.D. Tex. July 18, 2023) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)). Whether personal jurisdiction can be exercised over a defendant is a question of law and subject to *de novo* review." *Parks v. LoadStop, Inc.*, No. 4:23-CV-04570, 2024 WL 4452946, at *2 (S.D. Tex. Apr. 22, 2024) (quoting *In re Chinese Manufactured Dry-*

*wall Products Liability Litigation*, 742 F.3d 576, 584 (5th Cir. 2014), citing *also Shambaugh & Son, L.P. v. Steadfast Insurance Co.*, 91 F.4th 364, 368–69 (5th Cir. 2024) (applying the same standard of review)).

## II. Minimum Contacts

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant: (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment. "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.,* 523 F.3d 602, 609 (5th Cir. 2008).[2]

To satisfy the requirements of due process, the plaintiff must demonstrate: "(1) that the nonresident purposely availed himself [or herself] of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (citations omitted).

"Where a defendant 'has continuous and systematic general business contacts' with the forum state, the court may exercise 'general jurisdiction' over any action brought against the defendant. Where contacts are less pervasive, the court may still exercise 'specific' jurisdiction 'in

---

[2] The Court recognizes the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042 provides that:

> [i]n addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident
>
> . . .
>
> (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

However, allegations that suffice under the Texas long-arm statute—for example, an assertion that the defendant committed a tort in Texas—do not necessarily satisfy constitutional due process requirements. *Little & Gorgeous, Inc. v. Wild Tribe Screen Prints, LLC*, 717 S.W.3d 36 (Tex. App.—San Antonio 2025), *review denied* (Oct. 24, 2025) (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788 (Tex. 2005)); *but see Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 3d 499 (E.D. Ky. 2019).

a suit arising out of or related to the defendant's contacts with the forum.'" *McFadin v. Gerber*, 587 F.3d 753 (5th Cir. 2009) (citations omitted). Here, Wall claims only that the Court has specific jurisdiction over Defendants. *See ECF No. 6* at 8.

The Fifth Circuit has articulated a three-step analysis for specific jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *McFadin*, 587 F.3d at 759 (citations omitted).

The "minimum contacts" inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it "reasonably anticipates being haled into court." *Id.* (citations omitted). The defendant "must not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.'" *Id.* (citations omitted).

In determining whether or not the exercise of jurisdiction is fair and reasonable, defendants bear the burden of proof and "it is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *Id.* at 759–60 (citations omitted). In this inquiry the Court examines five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.* at 760 (citations omitted).

## ANALYSIS

The Court begins as it must with any Fifth Circuit authority in this regard. In *Embry v. Hibbard Inshore, L.L.C.*, the Fifth Circuit addressed the minimum contacts inquiry as it relates to remote-work. 803 Fed. Appx. 746 (5th Cir. 2020) (unpublished).[3] In affirming a district court's dismissal of Plaintiff Kristopher Embry's case for lack of personal jurisdiction, the Fifth Circuit detailed that:

> In 2014, Kristopher Embry was hired by Michigan-based company Hibbard Inshore, L.L.C., while Embry was living in Pennsylvania. Embry worked remotely as a "Client Relationship Manager," and traveled to Hibbard's Michigan offices approximately once per year. His duties included attending sales conferences, making sales calls, crafting proposals and estimates for potential clients, and maintaining relationships with existing clients. Embry stated in a declaration that at the time he was hired, he informed Hibbard of his hopes to move to New Orleans, Louisiana. Embry moved to New Orleans two years later, in 2016, because he wanted to live in a city with more accessible flights to Panama, where his partner was living. Embry further stated that Hibbard did not object to his moving to New Orleans, but there is no evidence that Hibbard had any contacts with Louisiana other than Embry's relocation to and presence in New Orleans. Hibbard discharged Embry in June 2018.
>
> . . .
>
> **The core of Embry's argument is that because he worked for Hibbard while living in Louisiana, the district court had personal jurisdiction over Hibbard in Louisiana.** There is no argument relating to general personal jurisdiction; Hibbard, organized and headquartered in Michigan, was clearly not "at home" in Louisiana. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 [] (2011). The only dispute involves specific personal jurisdiction.
>
> . . .
>
> As recognized by the district court, there are three steps to determine whether there is specific personal jurisdiction: (1) the defendant must have minimum contacts with the forum state, *i.e.*, it must have purposefully directed its activities toward the forum state or availed itself of the privileges of conducting activities there; (2) the cause of action must arise from the defendant's forum-related contacts; and (3) if a plaintiff makes the first two showings, a defendant may still defeat jurisdiction by showing the exercise of jurisdiction would be unfair or unrea-

[3] The Court recognizes that "[p]ursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4." *Embry v. Hibbard Inshore, L.L.C.*, 803 Fed. Appx. 746 n.* (5th Cir. 2020). However, because the Fifth Circuit has not released a published opinion on this issue, the Court looks to *Embry* for persuasive purposes.

> sonable. *See Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). **A plaintiff's contacts with the forum state do not satisfy the minimum contacts inquiry because the inquiry focuses on the defendant.** *See Walden v. Fiore*, 571 U.S. 277, 284 [] (2014).
>
> **Embry's arguments focus on his own connections with Louisiana. Among the connections were his residence in that state, his attempts to communicate with Louisiana businesses in his capacity as a Hibbard employee, his paycheck stub had a Louisiana address on it, and he worked from Louisiana.** The district court considered that at the time Embry was hired, he "stated that he had plans to live in Louisiana part time at some point in the future." We do not see that Hibbard's awareness of where Embry moved two years after being hired and where he eventually lived while working remotely supports that Hibbard purposefully directed activities toward Louisiana.
>
> Without citing Fifth Circuit precedent, **Embry urges the court to adopt a test for specific personal jurisdiction in remote-employment cases that focuses on (1) whether an employer agreed to its employee's moving to the forum state and (2) where the employee was performing his job duties when the events giving rise to the claims (here, termination) took place. Embry's proposed test is not consistent with the defendant-focused inquiry a court is to conduct in determining whether there is personal jurisdiction. The Supreme Court has held that a "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."** *Walden*, 571 U.S. at 285 [].
>
> Embry has failed to show that Hibbard had sufficient contacts with Louisiana. The district court correctly concluded it lacked personal jurisdiction over Hibbard.

*Id*. at 748 (emphasis added). With these principles in mind, the Court proceeds with its assessment of whether Wall makes out a *prima facie* case supporting specific jurisdiction.

The Court addresses in turn the jurisdictional allegations and evidence set forth by Wall according to the sequence Wall presents them in her Response: (1) that "CompOne Deliberately Recruited Ms. Wall From Texas;" (2) that "CompOne Directed Continuous Employment Activities Into Texas;" and (3) that "Ms. Wall's Termination Arose From Activities Directed At Texas." *ECF No. 6* at 2–7.

## I. Deliberate Recruitment

Wall claims Defendants' deliberate recruitment of her from Texas establishes specific jurisdiction. *ECF No. 6* at 2–4. Wall attached a Declaration to her Response, which states:

> 4. Before my employment with Defendants, I worked at Prime Healthcare. In approximately May 2024, Julia Killi and I became coworkers when Ms. Killi joined a training class at Prime Healthcare alongside my colleague Stephanie Uecker. Ms. Killi, Ms. Uecker, and I developed a professional and personal friendship during our time together at Prime Healthcare.
>
> 5. In early 2025, Ms. Killi left Prime Healthcare to accept a position at FDI Group/CompOne Administrators d/b/a AbsencePlus . . .
>
> 6. In May 2025, Prime Healthcare eliminated the positions held by me, Ms. Uecker, and Ms. Cory. Because Ms. Killi had maintained a personal relationship with all three of us, she reached out to help us find new employment at CompOne/AbsencePlus.
>
> 7. On Saturday, May 24, 2025, at 11:45 AM, Ms. Killi initiated contact with me via text message, writing: "Hi Rachel! It's Julia." We exchanged messages catching up, and Ms. Killi asked: "Can I call you?" I responded: "Of course!" Ms. Killi then called me by phone and told me about CompOne/AbsencePlus, explained that her team would be hiring soon, and recommended that I connect with Autumn Moore, Director of Absence. At 1:20 PM, Ms. Killi texted me her personal email address to facilitate the connection. True and accurate copies of these text message screenshots are attached as Exhibit B.
>
> 8. That same day, May 24, 2025, I connected with Autumn Moore on LinkedIn. By 3:10 PM, I had already heard back from Ms. Moore. I texted Ms. Killi: "Oh my God I already heard back from Autumn!" I reported that Ms. Moore was "hiring in July August," had asked me to forward my resume, and "said she would connect with me after she's done traveling next week." Ms. Killi responded: "I'm glad she reached out I know she said she was gonna start doing interviews beginning next month so hopefully it can happen sooner than July/august." (Exhibit B.)
>
> 9. On Tuesday, May 27, 2025, at 10:42 AM, Ms. Killi texted me: "Hi! I sent your resume to Autumn. She said she's hoping to reach out this week if not early next week because she's traveling." Ms. Killi personally forwarded my resume to Ms. Moore on my behalf. (Exhibit B.)
>
> 10. At no point did I apply for a position through a job board, online posting, or LinkedIn Recruiter pipeline. I never submitted an application. The Senior ADA Specialist role was created for me. I was personally recruited by an internal CompOne employee who reached out to me in Texas by text message, called me in Texas by phone, and forwarded my resume to CompOne's hiring manager on my behalf.

11. Critically, Ms. Killi informed me during our May 24 phone call that she could help me obtain a position at CompOne so long as I had not already moved to California. Ms. Killi explained that CompOne had already established payroll tax in Texas through ADP, making a Texas-based hire desirable to the company. However, CompOne had not established payroll tax in California. For this reason, Ms. Killi was unable to help Ms. Uecker or Ms. Cory obtain positions at CompOne, because both resided in California. Ms. Killi also told me that if I were hired, I would not be able to relocate to California—I would need to remain in Texas or move to another state where CompOne had already established payroll tax through ADP.

12. Based on these conversations, I understood that CompOne deliberately selected me for employment in part because I lived in Texas, not despite it. Texas was a state where CompOne had already established the infrastructure to employ workers.

13. That same day, May 24, 2025, at 1:46 p.m., I also reached out to Autumn Moore directly via LinkedIn messaging. In my message, titled "Request for Informational Interview," I wrote that I was "encouraged by Stephanie Willis and Julia Killi to reach out" to Ms. Moore and requested 15–20 minutes for a quick chat. True and accurate copies of the LinkedIn message screenshots between myself and Autumn Moore, from May 24 through June 5, 2025, are attached as Exhibit N.

14. At 3:05 p.m. on May 24, 2025, Ms. Moore responded on LinkedIn: "Hi Rachel, I am actively recruiting so I can start hiring again in July/August." Ms. Moore asked me to "send your resume to Julia so she can forward it to me. That way I remember she gets the credit for the referral." This confirms that Ms. Killi's outreach to me was part of CompOne's internal employee referral program—not a coincidental personal favor unrelated to CompOne's recruiting operations. (Exhibit N.)

15. On May 27, 2025, at 12:01 p.m., Ms. Moore wrote on LinkedIn: "I've sent your resume to Dru Hamilton who is leading our ADA efforts . . . Ms. Moore also stated she sent Julia her "blank resume template to have her send it to you" and asked for my availability to "get an interview scheduled if you're still interested." This message confirms that CompOne was offering a "fully remote" position and actively courting me for it. (Exhibit N.)

16. On May 28, 2025, at 6:39 a.m., Ms. Moore wrote: "I wanted to see if you have any interest in a Team Lead role?" and provided a salary breakdown by position: LOA Specialist $55K–$65K/year, ADA Specialist $60K–$70K/year, Team Lead $60K–$75K/year. This exchange demonstrates that CompOne was not merely filling an existing vacancy—it was actively tailoring a role to attract me. (Exhibit N.)

> 17. On May 30, 2025, I provided Ms. Moore my availability in Central Standard Time: "M-Th 1230pm-600pm CST, F 800am-600pm CST." Ms. Moore responded: "You are a mind reader. I will schedule an interview next week. Have an amazing weekend!" Ms. Moore knew from this exchange that I was located in the Central Time Zone—[*i.e.*], in Texas—and scheduled a formal interview with that knowledge. (Exhibit N.)
>
> 18. On June 5, 2025, the morning of my interview, Ms. Moore wrote on LinkedIn: "Good luck this morning!" After the interview, at 1:39 p.m., Ms. Moore wrote: "I have great news! Sending you a 2nd Teams invite for 2:00pm unless you're not available." Ms. Moore then asked: "Can I call you real fast from my work cell phone then?" I provided my phone number, and Ms. Moore called me in Texas. Three days later, on June 6, 2025, I received the formal offer letter. The entire recruitment and interview process was conducted with me in Texas, by CompOne personnel reaching into Texas. (Exhibit N.)

*ECF No. 6-1* at 2–6. In turn, Defendants attached a Declaration from Julia Killi to their Reply, which states:

> 1. I am currently employed by CompOne Administrators, Inc. d/b/a AbsencePlus (referred to as "AbsencePlus" herein) and work remotely out of Las Vegas, Nevada.
>
> . . .
>
> 4. I previously worked with Plaintiff Rachel Wall at Prime Healthcare immediately before starting my employment with AbsencePlus. While at Prime Healthcare Rachel and I worked in the same field of leave and disability management, providing guidance under the Americans with Disabilities Act ("ADA"), Family and Medical Leave Act, or other applicable regulations.
>
> 5. On or about May 24, 2025, I was mentioned in a post on LinkedIn by Rachel in which she shared that she was part of a reduction in force for Prime Healthcare. I commented on her post to give my condolences. Shortly after I commented on her post, at 9:20am on May 24, 2025, Rachel sent me a direct message asking to chat and provided her cell phone number. Prior to this direct message exchange, I did not have Rachel's personal cell phone number.
>
> 6. Exhibit B-1 is a true and accurate copy of the post I saw on Rachel's LinkedIn page. Exhibit B-2 is a true and accurate copy of the direct messages shared between Rachel and myself. I pulled these documents on May 4, 2026, from my own LinkedIn account.

7. After our direct messaging, Rachel and I connected by phone on May 24, 2025, during which she explained the circumstances leading up to her reduction in force, or RIF, and shared that she was actively seeking new employment.

8. While I did not have a specific role in mind at the time, I knew AbsencePlus has an ongoing need for people with leave and ADA accommodation experience and looks to its pipeline to fill consultant or specialist roles as they come up or as a need arises for clients. Based on my own experience and the experience I have seen over my time working with AbsencePlus, individuals with this skill set and experience are interviewed and, if hired, are placed in one of the client service teams based on need.

9. In addition to Rachel, I referred four (4) other people to work at AbsencePlus in the same area of leave and ADA management. Three (3) of my referrals were individuals who reside and work in Nevada, and one (1) work and resides in Tennessee.

10. I thought Rachel's experience as a Disability Specialist II, at Prime Healthcare may be applicable to AbsencePlus as various teams needed employees with that skill set to support our operations. When Rachel and I spoke on May 24, 2025, I provided an overview of AbsencePlus and the nature of the work we do. I also advised Rachel that my manager, Autumn Moore, was traveling at the time, but offered to forward her Rachel's resume for review if she wished to pursue an interview. During that conversation, Rachel asked whether she should reach out to Autumn directly, and I recommended she wait until Autumn returned from travel so her resume could be reviewed at that time. However, Rachel still proceeded to reach out to Autumn via LinkedIn regarding potential employment.

11. On or about May 27, 2025, I also forwarded Rachel's resume to my manager Autumn and recommended her for AbsencePlus in light of her relevant experience with ADA accommodations and leave management.

12. Afterward, Autumn connected directly with Rachel and scheduled an interview with Rachel, Autumn, and Ian Wigman, another Team Lead. I was informed of the interview date by both Autumn and Rachel. Sometime following the interview, Autumn shared with me that it had gone well and advised an employment offer would be extended to Rachel pending leadership approval of the Senior ADA Specialist role Rachel was going to fill.

13. I previously worked with Halei Cory at Prime Healthcare and when I found out she was subject to the same RIF as Rachel, I shared her resume with my Autumn manager. In response, Autumn advised that at that time, AbsencePlus was not set up to hire employees in the state of California where Halei resided.

14. I did not refer Stephanie Uecker to work for AbsencePlus as I did not maintain contact with her following my departure from Prime Healthcare.

> 15. AbsencePlus has a referral bonus program that rewards AbsencePlus employees who refer an individual for employment and if that candidate is hired and remains employed for at least six (6) months. The referral bonus is based on the referred employee's salary and is not related to the state in which they reside. No one with the company has ever indicated to me a preference for hiring in Texas, nor has anyone ever directed me to target or recruit employees who reside in Texas.

*ECF No. 8-1* at 1–4. In her Surreply, Wall argues "[w]here the Court decides a Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdiction, and the Court must 'accept[] uncontroverted, nonconclusory allegations as true and resolv[e] all controverted allegations in the plaintiff's favor.' . . . Defendants ignore this standard. They invite the Court to credit Ms. Kiili's declaration over Plaintiff's and to draw adverse inferences against Plaintiff. That is not the role of the Court at the *prima facie* stage. A 12(b)(2) motion supported only by competing affidavits cannot be granted on this record." *ECF No. 12* at 9. The Court again turns to any Fifth Circuit authority in this regard.

> Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a *prima facie* case for specific jurisdiction has been presented. **Establishing a *prima facie* case still requires the plaintiff to show the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state.** *See Burger King,* 471 U.S. at 474 [] ("[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State."); *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1079 (10th Cir.1995) ("[T]he mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts."); *IMO Indus., Inc. v. Kiekert, A.G.,* 155 F.3d 254, 263 (3d Cir.1997); *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 625–26 (4th Cir.1997), *cert. denied,* 523 U.S. 1048 [] (1998). The district court's examination of Appellee's contacts beyond those alleged in Appellants' petition is therefore not a rejection of Appellants' allegations as false, but a straightforward application of the due-process-minimum-contacts analysis. Moreover, the district court correctly held that the [*prima facie*] case requirement does not require the court to credit conclusory allegations, even if uncontroverted. *See Felch,* 92 F.3d at 326 n. 16 (crediting nonconclusional factual allegations of the complaint to the extent those are not controverted by any of the evidence); *Mass. Sch. of Law at Andover,*

> *Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir.1998) ("[T]he law does not require us to struthiously [] credit conclusory [jurisdictional] allegations or draw farfetched inferences.") (citation and internal quotation marks omitted).

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868–69 (5th Cir. 2001) (emphasis added).

Thus, while Wall is correct that any genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a *prima facie* case exists, *Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir.), *cert. denied,* 506 U.S. 867 (1992), she must still show the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state. *Panda*, at 868–69.

Applying these standards to this case, Wall has not shown Defendants purposefully directed their activities toward Texas or purposefully availed themselves of the privileges of conducting activities in Texas. *McFadin v. Gerber*, 587 F.3d 759 (5th Cir. 2009) (citations omitted). The Fifth Circuit's *Embry* decision focused on the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277, 285 (2014), which states a proper minimum-contacts analysis "looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there." *Embry v. Hibbard Inshore, LLC*, 803 F. App'x 746, 748 (5th Cir. 2020). While Wall uses the term "recruitment" in her Response, she concedes she contacted Julia Killi and sent Julia Killi her cell phone number via a LinkedIn message. *ECF No. 12* at 3 ("The dispositive jurisdictional fact is not who sent the first LinkedIn message"). Setting this issue aside, regardless of who contacted who first, Wall provides no evidence to support her allegations Defendants "purposefully directed its activities toward the State of Texas by hiring [her]." *ECF No. 1-3* at 6–7.

In her Declaration, Wall states "Ms. Killi . . . told me that if I were hired, I would not be able to relocate to California—I would need to remain in Texas or move to another state where CompOne had already established payroll tax through ADP . . . Based on these conversations, I understood that CompOne deliberately selected me for employment in part because I lived in Texas." *ECF No. 6-1* at 3; *ECF No. 12-1* at 4.

A sister district court in the Southern District of Texas recently provided a summary of the case law regarding remote-work and issues of personal jurisdiction, reporting that:

> As remote work has become more common courts have looked for additional conduct from employers beyond the mere hiring of a remote employee to establish that the employers expressly aimed their activities at the forum." [*Parks v. LoadStop, Inc.*, No. 4:23-CV-04570, 2024 WL 4452946, at *5 (S.D. Tex. Apr. 22, 2024)] ("These include recruitment efforts directed at the forum, *see Martinez v. Northern Arizona University*, 553 F. Supp. 3d 908, 918–19 (D.N.M. 2021), conducting business operations in the forum, *see Franey v. American Battery Solutions, Inc.*, No. 22-cv-03457-LB, 2022 WL 4280638, *9 (N.D. Calif. September 15, 2022), following up on business leads generated by the plaintiff in the forum, *id.*, or hiring the plaintiff to specifically advance business within the forum, *see Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 594 (N.D. Cal. 2022)"). Indeed, remote work situations, without more, "do not support a finding of minimum contacts." *Id.* (citing *Fields v. Sickle Cell Disease Association of America, Inc.*, 376 F. Supp. 3d 647, 652–54 (E.D.N.C. 2018) (granting motion to dismiss for lack of personal jurisdiction where plaintiff telecommuted, no meetings were held in forum, no employees traveled to forum to work with plaintiff, and plaintiff initiated contact with defendant by inquiring about possible employment and observing that plaintiff's choice to complete her work in the forum state for her own reasons was a unilateral decision that cannot be fairly attributed to the defendant as an attempt to avail itself of the privilege of conducting business in the forum state); *Gonzalez v. US Human Rights Network*, 512 F.Supp.3d 944, 959–60 (D. Ariz. 2021) (granting motion to dismiss for lack of personal jurisdiction because remote working plaintiff failed to show defendants had minimum contacts with forum state); and *Martinez*, 553 F. Supp. 3d at 917-20 (same); *Wiseman v. Ravyn Group, Inc.*, No. C23-1281-JCC, 2023 WL 8472806, at *3 (W.D. Wash. December 7, 2023) (granting motion to dismiss for lack of personal jurisdiction because "Defendants did not expressly aim their activities at Washington by simply employing Plaintiff"); *Jester v. RS Diving Contractor, GMBH*, [No. 4:21-CV-00476,] 2021 WL 3832811, *6–7 (S.D. Tex. Apr. 29, 2021) (granting motion to dismiss for lack of personal jurisdiction because remote employee failed to allege facts showing employer sought to have work conducted in Texas specifically); *Bertolini-Mier v. Upper Valley Neurology Neurosurgery, P.C.*, No. [5:16-CV-

> 00035], 2017 WL 4081901, at *5 (D. Vt. September 13, 2017) (employer's knowledge and facilitation of remote work was "not a purposeful effort" to have the work conducted in the forum)).[4]

*Adeniyi v. ContinuumRx, Inc.*, No. 4:24-CV-04264, 2025 WL 2176521, at *4 (S.D. Tex. July 10, 2025), *R. & R. adopted sub nom. Adeniyih v. ContinuumRX, Inc.*, No. 4:24-CV-04264, 2025 WL 2175829 (S.D. Tex. July 29, 2025).

Wall's proposition—that her understanding "that CompOne deliberately selected me for employment in part because I lived in Texas"—is belied by her assertion in the same sentence that she could "remain in Texas or move to another state where CompOne had already established payroll tax through ADP." *ECF No. 6-1* at 3; *ECF No. 12-1* at 4. This indicates no preference by Defendants as to where Wall performed her work, as long as it was within a state where CompOne had already established payroll tax through ADP. That being from Texas made Plaintiff qualified for the job or more "desirable" does not equate to a deliberate, targeted, purposeful recruitment initiative aimed at Texas by Defendants. *ECF No. 6-1* at 4.

In addition, aside from the recruitment matter, Wall presents no argument or evidence to controvert the statements in the Declaration of Erica Healander ("Healander"), the Chief People Officer of Financial Designs Inc. and CompOne. *ECF No. 4-1*. In the Declaration, Healander states:

---

[4] *See also Waseem v. Stability AI, Inc.*, No. 2:24-CV-00036, 2024 WL 5168098, at *6–7 (E.D. Va. Dec. 19, 2024). In *Waseem*, the court found that "[i]n assessing whether Plaintiff's situation is distinguishable from the mine-run of remote worker cases, the court bears in mind that "the relationship among the defendant, the forum, and the litigation must arise out of contacts that the 'defendant *himself*' creates with the forum and must be analyzed with regard to the defendant's contacts with the forum itself, not with persons residing there." *Id.*, at *6 (emphasis is original) (quoting *Walden v. Fiore*, 571 U.S. 277, 278 (2014)). The court found no personal jurisdiction because the facts demonstrated contacts between the defendant and the plaintiff, but not between the defendant and the forum state—the plaintiff's allegations merely showed that "each action occurred in Virginia or involved a Virginia entity was a 'fortuitous' consequence of Plaintiff's Virginia residency," and "was not a purposeful effort on the part of Defendants to do business in Virginia." *Id.* (citing *Weisner v. FLIR Sys., Inc.*, No. 5:19-CV-00201, 2019 WL 4962594, at *4 (E.D. N.C. Oct. 7, 2019) (finding that plaintiff's allegations that defendant solicited plaintiff's employment, required him to complete pre-employment tasks, and sent direct deposits to his bank account–all with the knowledge that plaintiff was in North Carolina at the time and that his bank account was registered with a North Carolina address—"are insufficient [to establish personal jurisdiction] because they are simply incidental to [Plaintiff] being a North Carolina resident")).

> 9. CompOne and FDI do not operate their businesses in Texas, nor do they provide any support or services for clients or customers located in Texas. Neither company maintains offices in Texas, nor do any of the corporate leadership reside or work in Texas. Indeed, Ms. Wall's immediate manager did not even reside in Texas, nor did her skip level manager.
>
> 10. When CompOne hired for the role Ms. Wall filled, it posted the position online and merely indicated the role would allow an applicant to work remotely. CompOne did not target employees in Texas nor position itself in any manner to recruit from Texas and as such the fact that Ms. Wall worked remotely from Texas was mere happenstance and not a product of CompOne's efforts to avail itself to Texas. Indeed, the person who took over Ms. Wall's role for CompOne resides in and works remotely from Georgia.

*Id*. at 2–3. Wall does not refute these statements, other than to argue "Erica Healander's declaration describes a general corporate practice [for hiring]; it does not describe how [Wall] was actually hired." *ECF No. 6* at 3. Wall therefore concedes Defendants have no business dealings in Texas.

Finally, Wall's Offer Letter, sent to Wall by Healander, does not indicate Defendants sought to have work conducted specifically in Texas or contemplated where Wall's work was to be performed. *ECF No. 6-2*. *See e.g.*, *File Image Servs., LLC v. Klein*, No. 2:09-CV-00484, 2009 WL 2412443, at *2 (E.D. Wis. 2009) (finding that even if "defendants were fully aware that the plaintiff had relocated to Wisconsin, this is insufficient to cause defendants to be subject to the jurisdiction of Wisconsin courts" when "[t]here was no suggestion that the contract specified where the work was to be performed"); *see also Embry v. Hibbard Inshore, LLC*, 803 F. App'x 746, 748 (5th Cir. 2020) ("We do not see that Hibbard's awareness of where Embry moved two years after being hired and where he eventually lived while working remotely supports that Hibbard purposefully directed activities toward Louisiana."); *see also See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (explaining that sufficient minimum contacts cannot arise from the "unilateral activity of another party or a third person").

Therefore, Wall's claims regarding Defendants' deliberate recruitment are not supported by Walls' allegations or evidence. The Court finds the evidence before the Court demonstrates Defendants did not actively recruit Wall or hire her due to her Texas residence. The Court also finds the allegations, evidence, and facts presented in this case are distinguishable from remote-work cases where courts have found purposeful availment by nonresident defendants.[5]

Accordingly, while the Court will consider Wall's additional arguments below, based on the above analysis the Court finds a sufficient basis for granting Defendants' Motion to Dismiss, (*ECF No. 4*), for lack of personal jurisdiction.

## II. Directed Continuous Activities

Wall further claims Defendants "deliberately directed the employment relationship into Texas through multiple affirmative acts." *ECF No. 6* at 4.

### A. Offer Letter

Wall first argues Defendants deliberately directed the employment relationship into Texas by "extend[ing] a formal offer of employment to Ms. Wall at her Texas address." *ECF No. 6* at 4. Some courts have found offer letters that contemplate work will be performed in the forum state to be appropriate indicia of purposeful availment. *Fuller v. Carrera & Partners, Inc.*, No. 1:25-CV-11565, 2026 WL 893753, at *4 (D. Mass. Mar. 31, 2026); *Lawrence v. Next Ins., Inc.*,

---

[5] *See, e.g.*, *Cossart v. United Excel Corp.*, 804 F.3d 13, 16–17, 21 (1st Cir. 2015) (finding purposeful availment where a Kansas defendant employer recruited a Massachusetts resident to conduct sales work in Massachusetts on its behalf, formalized the arrangement in a contract stating that the work would occur in Massachusetts, and facilitated the work by providing office equipment for use in Massachusetts and registering a sales office with the Massachusetts government); *Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 3d 499, 510 (E.D. Ky. 2019) (finding purposeful availment where an employer "aggressively sought out" the plaintiff in Kentucky to work for the company, entered into a contract with her to work from Kentucky, and provided her with computer equipment to do so); *Winner v. Tryko Partners, LLC*, 333 F. Supp. 3d 250, 256, 264 (W.D.N.Y. 2018) (finding personal jurisdiction where a New Jersey defendant company employed the plaintiff to "provide marketing services" from her home in New York, expressly agreed to her continuing to live and work in New York, and enlisted the plaintiff to attend multiple meetings with vendors in New York); *Stuart v. Churn LLC*, No. 1:19-CV-00369, 2019 WL 2342354, at *5 (M.D. N.C. June 3, 2019) (finding purposeful availment where the New York defendant employer hired the plaintiff with the understanding that he would work out of his home in North Carolina, provided him an allowance to support office expenses there, and knew that he was working to expand the company's business in North Carolina and was meeting with potential distributors there).

774 F. Supp. 3d 237, 256 (D. Mass. 2025). Per Wall, "[t]he offer letter was issued on CompOne Administrators letterhead and established the terms of a continuing employment relationship to be performed in Texas." *ECF No. 6* at 4. However, as mentioned above, Wall's Offer Letter (sent to Wall by Healander), does *not* indicate Defendants sought to have work conducted specifically in Texas or contemplate where Wall's work was to be performed. *ECF No. 6-2*. The Offer Letter also does not include any physical address in Texas as argued. *Id*.

### B. Equipment Shipped to Texas, Texas-Specific Benefits Administration, Texas Payroll Tax Infrastructure

Wall next argues Defendants deliberately directed the employment relationship into Texas by shipping equipment to her in Texas; by Erica Healander guiding Wall "through Texas-specific health benefits and in-network healthcare providers in the San Antonio area;" and by having "a pre-existing relationship with ADP for Texas payroll taxes." *ECF No. 6* at 4–5. Some courts have found these types of actions—that are not particular to the forum state and could have occurred in other states—not to be appropriate indicia of purposeful availment. *Tripp v. Ascentage Pharma Group Intl.*, No. 2:22-CV-05934, 2023 WL 5425506, at *4–6 (D.N.J. Aug. 23, 2023) (granting motion to dismiss for lack of specific personal jurisdiction where the court found that although the plaintiff "worked remotely from his home in New Jersey, paid New Jersey taxes, collected New Jersey unemployment and disability benefits, received office equipment from [his out-of-state-based employer], and stored business-related documents in his home, those actions were not particular to New Jersey and could have occurred in any state" where the plaintiff chose to work, and concluding the foreign employer had "not purposefully availed itself of the New Jersey forum"); *Crosson v. TMF Health Quality Inst.*, No. 3:20-CV-18800, 2023 WL 2609048, at *5 (D.N.J. Mar. 23, 2023) (concluding that defendants did not avail themselves of the privileges of conducting business in New Jersey where plaintiff performed daily work activi-

ties in New Jersey consisting of phone calls, letters, and emails, and the defendants provided the plaintiff with a company-issued laptop and access to software). The Court finds these cases persuasive and factually similar to this case. The Court therefore finds these claims by Wall would be identical if Wall "remain[ed] in Texas or move[ed] to another state where CompOne had already established payroll tax through ADP."[6] *ECF No. 6-1* at 3; *ECF No. 12-1* at 4.

### C. Daily Supervision Directed Into Texas and Recruitment of Additional Employees Through Ms. Wall in Texas

Wall finally argues Defendants deliberately directed the employment relationship into Texas through "daily work assignments, scheduled calls, emails, and Microsoft Teams messages to Ms. Wall at her Texas workstation," and through Wall's recommendations of other individuals from Texas for employment to Defendants. *ECF No. 6* at 5–6.

With respect to Wall's assertion that Defendants managed her employment through phone calls and emails directed to Texas, the Court finds such contacts insufficient to establish minimum contacts under these circumstances. *See Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 103. (5th Cir. 2018) ("The contacts Cpt. Sangha identifies to support specific jurisdiction—email communications from two Navig8 representatives located outside the country to Cpt. Sangha's then-supervisor in Alabama, an employment contract between Cpt. Sangha and Marine Consultants allegedly confected in Houston, that the email communications were target-

---

[6] *Magill v. Elysian Glob. Corp.*, No. 1:20-CV-06742, 2021 WL 1221064, at *4 (D.N.J. Apr. 1, 2021) (granting motion to dismiss for lack of personal jurisdiction where the court found that the plaintiff's physical location in New Jersey was the only factor that connected the dispute to New Jersey and noting "[p]laintiff's claims against [d]efendants would be identical if he lived anywhere else in the world" as "[a]ll of [p]laintiff's work and the entire nature of [d]efendants' business was performed online with world-wide scope"); *Cf. Cossart v. United Excel Corp.*, 804 F.3d 13, 18–19 (1st Cir. 2015) (finding personal jurisdiction over a Kansas corporation that provided the plaintiff with business equipment to work from her home in Massachusetts and registered in Massachusetts to establish a "general contracting sales office" there) *and Chadwick v. St. James Smokehouse, Inc.*, No. 2:14-CV-02708, 2015 WL 1399121, at *4–5 (D.N.J. Mar. 26, 2015) (finding sufficient minimum contacts in a diversity contract case where the defendant Florida corporation purchased and shipped office equipment to New Jersey where it hired the plaintiff to remotely perform essential functions of the business; sold its product to New Jersey businesses; and used a New Jersey court to collect an unpaid debt).

ed at a contract formed in Texas, and that the emails concerned work that was to be performed in Texas—are legally insufficient to support a finding of specific jurisdiction."); *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (noting that "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with persons affiliated with the State") (quoting *Burger King*, 471 U.S. at 475) .[7]

Additionally, to the extent Wall claims CompOne "was actively utilizing Ms. Wall . . . as a recruiter" because she "recommended" other individuals, there is no evidence CompOne directed her to take such actions or that she was hired for such a purpose. *ECF No. 6* at 6.

Accordingly, because Wall's arguments in this regard also fail, the Court again finds a sufficient basis for granting Defendants' Motion to Dismiss, (*ECF No. 4*), for lack of personal jurisdiction.

## III. Employment Termination

Lastly, Wall claims "[t]he Supreme Court's *Calder v. Jones* 'effects test' provides an independent basis for jurisdiction," based on "the conduct underlying [her] termination [all being] directed at Texas." *ECF No. 6* at 13 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

Under the effects test, a court may exercise specific jurisdiction when (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the resulting harm to the plaintiff; and (3) the de-

[7] *See also Higgins v. Catalyst Exhibits*, No. 9:20-CV-03424, 2021 WL 3886597 (D.S.C. Aug. 31, 2021) (citing *Neal v. Cigniti Techs., Inc.*, No. 0:18-CV-00262, 2018 WL 4782330, at *3 (D.S.C. Aug. 9, 2018), *R. & R. adopted,* No. 0:18-CV-00262, 2018 WL 4775570 (D.S.C. Oct. 3, 2018), *order vacated on reconsideration*, No. 0:18-CV-00262, 2018 WL 5719995 (D.S.C. Nov. 1, 2018) ("Here, Cigniti cannot be said to have performed purposeful acts to create a substantial connection with the forum state simply because it sent communications to Neal, who happened to be in South Carolina through no purposeful act of Cigniti.")).

fendant expressly aimed his conduct at the forum, so that the forum can be said to be the focal point of the tortious activity. *Calder*, 465 U.S. at 789.[8]

The Fifth Circuit has addressed the "effects" test on multiple occasions. In *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, the court stated:

> Appellants rely on *Calder v. Jones,* 465 U.S. 783, 789 [] (1984), which upheld specific jurisdiction in a California court over Florida defendants based on the allegedly libelous "effects" of their Florida conduct in California, in arguing that Appellee's actions allegedly caused tortious "effects" in Texas sufficient to support jurisdiction. However, *Calder* 's "effects" test "is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state." *Allred v. Moore & Peterson,* 117 F.3d 278, 286 (5th Cir.1997), *cert. denied,* 522 U.S. 1048 [] (1998). "'[T]he key to *Calder* is that the effects of an alleged intentional tort are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum.'" *Id.* (quoting *Wallace,* 778 F.2d at 395). Appellants' allegations, even if true, only relate to the foreseeability of causing injury in Texas, which is not a "sufficient benchmark" for specific jurisdiction. *Burger King,* 471 U.S. at 474 []; *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 212 (5th Cir.1999) ("Foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum."). The

---

[8] In *Calder,* a California actress brought a libel suit in California state court against a reporter and an editor, both of whom worked for the National Enquirer at its headquarters in Florida. The plaintiff's libel claims were based on an article written and edited by the defendants in Florida for publication in the National Enquirer, a national weekly newspaper with a California circulation of roughly 600,000.

> We [(the Supreme Court)] held that California's assertion of jurisdiction over the defendants was consistent with due process. Although we recognized that the defendants' activities "focus[ed]" on the plaintiff, our jurisdictional inquiry "focuse[d] on 'the relationship among the defendant, the forum, and the litigation.' " *Id.,* at 788, 104 S.Ct. 1482 (quoting *Shaffer,* 433 U.S., at 204, 97 S.Ct. 2569). Specifically, we examined the various contacts the defendants had created with California (and not just with the plaintiff) by writing the allegedly libelous story.
>
> We found those forum contacts to be ample: The defendants relied on phone calls to "California sources" for the information in their article; they wrote the story about the plaintiff's activities in California; they caused reputational injury in California by writing an allegedly libelous article that was widely circulated in the State; and the "brunt" of that injury was suffered by the plaintiff in that State. 465 U.S., at 788–789, 104 S.Ct. 1482. "In sum, California [wa]s the focal point both of the story and of the harm suffered." *Id.,* at 789, 104 S.Ct. 1482. Jurisdiction over the defendants was "therefore proper in California based on the 'effects' of their Florida conduct in California." *Ibid.*
>
> The crux of *Calder* was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff. The strength of that connection was largely a function of the nature of the libel tort.

*Walden v. Fiore*, 571 U.S. 277, 287 (2014).

> "foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should *reasonably* anticipate being haled into court there." *Burger King,* 471 U.S. at 474, [] (emphasis added). To conclude that a defendant should "reasonably anticipate" being haled into the forum State requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," or "purposefully directs" its efforts toward the forum State residents. *Id.* at 475, 476 [].

253 F.3d 865, 869 (5th Cir. 2001). In *Montcreif Oil Intern. Inc. v. OAO Gazprom*, the court added "[s]uch jurisdiction is rare. We have expressly declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident." 481 F.3d 309, 314 (5th Cir. 2007). And finally, in *Sangha v. Navig8 ShipManagement Private Limited*, the court further explained that:

> The Supreme Court recently clarified the form that forum contacts must take in intentional tort cases for the effects to be applicable, reiterating that mere injury to a forum resident is not a sufficient connection to the forum. *Walden*, 134 S.Ct. at 1125. "Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.* The proper question is not whether [plaintiff] experienced an injury or effect in a particular location, but whether [defendant's] conduct connects it to the forum in a meaningful way. [Here, Plaintiff] Cpt. Sangha's presence in the Gulf of Mexico/Port of Houston is largely a consequence of *his* relationship with the forum, and not of any actions [Defendant] Navig8 took to establish contacts with the forum. Accordingly, [Plaintiff] Cpt. Sangha has failed to establish a *prima facie* case of personal jurisdiction.

882 F.3d 96, 103–104 (5th Cir. 2018) (emphasis in original).

Upon review, the Court finds Wall's arguments relating to the "effects" test focus on a "mere injury to a forum resident." *ECF No. 6* at 13 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Wall argues "Defendants knew that the brunt of the injury—loss of employment, lost wages, and emotional distress—would be felt by Ms. Wall in the state where she lived and worked." *ECF No. 6* at 14. Again, the Court finds these "effects" would be identical if Wall "remain[ed] in Texas or move[ed] to another state where CompOne had already established payroll

tax through ADP." *ECF No. 6-1* at 3; *ECF No. 12-1* at 4. Therefore, unlike in *Calder* where California was the focal point of the defamatory story, the "effects" in this case were not intentionally targeted at and focused on the forum such that Texas could be considered the focal point of the alleged tortious activity.[9] *See Embry v. Hibbard Inshore, LLC*, 803 F. App'x 746, 748 (5th Cir. 2020) (declining "to adopt a test for specific personal jurisdiction in remote-employment cases that focuses on (1) whether an employer agreed to its employee's moving to the forum state and (2) where the employee was performing his [or her] job duties when the events giving rise to the claims (here, termination) took place").

Accordingly, because Wall's arguments in this regard also fail, the Court again finds a sufficient basis for granting Defendants' Motion to Dismiss, (*ECF No. 4*), for lack of personal jurisdiction.[10][11]

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss, (*ECF No. 4*). Lacking personal jurisdiction, this matter is **DISMISSED WITHOUT PREJUDICE**.

---

[9] *Richardson v. Smartronix, LLC*, No. 3:25-CV-14057, 2026 WL 1189224 (D.N.J. Apr. 30, 2026) (citing *Marten v. Godwin*, 499 F.3d 290, 298 (3d Cir. 2007)); *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998) ("The defendant must 'manifest behavior intentionally targeted at and focused on' the forum for *Calder* to be satisfied." (quoting *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997), *cert. denied*, 523 U.S. 1048 (1998))); *but see Mammadov v. BTG Specialty Pharm.*, No. 3:25-CV-02652, 2026 WL 1091726 (S.D. Cal. Apr. 22, 2026).

[10] The Court need not examine whether the exercise of personal jurisdiction comports with notions of fair play and substantial justice because Plaintiff failed to establish the first due process requirement of minimum contacts. *See, e.g., Addison Ins. Mktg., Inc. v. Evans*, No. 3:02-CV-00994, 2002 WL 31059806, at *8 (N.D. Tex. Sept. 12, 2002).

[11] The Court also need not examine Defendants' 12(b)(3) arguments. To the extent Plaintiff alternatively requests transfer, rather than dismissal, the Court notes a Sabine Pilot action is subject to a two-year limitations period. *Stroud v. VBFSB Holding Corp.*, 917 S.W.2d 75, 79 (Tex. App.—San Antonio 1996, writ denied), *disapproved on other grounds*, *Agar Corp. v. Electro Circuits Int'l*, 580 S.W.3d 136 (Tex.2019); *see* Tex. Civ. Prac. & Rem. Code § 16.003(a). A Sabine Pilot action accrues, and the limitations period begins to run, when the decision to terminate employment is made and notice is given, rather than on the designated date on which the employment terminates. *Stroud v. VBFSB Holding Corp.*, 917 S.W.2d 75, 81 (Tex. App.—San Antonio 1996, writ denied), *disapproved on other grounds*, *Agar Corp. v. Electro Circuits Int'l*, 580 S.W.3d 136 (Tex.2019); *cf. Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (civil-rights case). Wall's Complaint includes claims that Defendants terminated her employment on August 19, 2025. *ECF No. 1-3* at 5. Wall therefore has over a year to refile her Complaint.

The Clerk of Court is **DIRECTED** to close this case after entering the contemporaneously-issued Final Judgment.

It is so ORDERED.
SIGNED this 5th day of August, 2026.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE